UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACK A. SHULMAN, | Civil Action Number: |
| Plaintiff, | 2:09-cv-02494 |
| v. | OPINION |
| DONALD ZSAK, *et al*., | HON. WILLIAM J. MARTINI |
| Defendants. | |

MEMORANDUM OPINION

I.   INTRODUCTION

This action is brought by pro se Plaintiff Jack A. Shulman against Cranford Police Officers Donald Zsak, Spencer Durkin, and John Heester (collectively "State Defendants"). This action is also brought against National Security Agency ("NSA") Director Keith Alexander, NSA Deputy Director John C. Englis, NSA Inspector General Bill Shea, Lourdes Estores,[1] and Federal Bureau of Investigation ("FBI") Agent Gary Adler (collectively "Federal Defendants"). Plaintiff alleges that he was an undercover agent in the employ of the NSA; however, he puts forward no evidence and makes no proffer that any document or other evidence in his possession would meaningfully support his factual claim. The gravamen of his claim is that on June 17, 2008, the State Defendants (at the direction of the Federal Defendants), seized him and his gun, and that this seizure was a conspiracy in violation of 42 U.S.C. § 1985(1) (prohibiting interfering in a federal officer's exercise of his duties).

Plaintiff filed the original complaint on May 5, 2009. Plaintiff's pro se filings have been difficult to decipher. Since filing this action, the briefing in this matter has been long and inordinately complex. However, in short, the Federal Defendants responded with a motion

---

[1] Estores' position with the NSA is disputed. Plaintiff claims she is an NSA Special Agent, while the Federal Defendants claim she is not employed with the NSA. In another action filed by Plaintiff in this Court, Civil Action No. 09-4401, the government submitted an affidavit, stating that Janice Doskey and Lourdes Estores were employees of the NSA. The Federal Defendants have since revised or corrected the government's position, submitting an affidavit in this action, (Doc. No. 54-2), stating that its prior affidavit was made in error. The Federal Defendants' position is that the NSA never employed either Doskey or Estores and that neither was acting within the scope of federal employment during any of the events alleged by Plaintiff. Plaintiff has filed multiple actions in multiple jurisdictions and his pro se filings are repetitive, dense, and rambling. It is not surprising that the federal government made an error of this type in regard to one of the many defendants haled into court by Plaintiff.

to dismiss. Plaintiff filed a motion to amend the complaint and a proposed amended complaint. The State Defendants responded to the amended complaint with a motion for summary judgment. For the reasons explained below, but primarily because Plaintiff acknowledges that he had not been paid by the federal government for the *seventeen years prior to the alleged violation* of Section 1985, the Federal Defendants' and the State Defendants' motions will be **GRANTED**. In view of the Court's decision to grant both motions, all other motions will be dismissed as moot.

## II.     BACKGROUND

On June 17, 2008, the Cranford Police responded to a call from the FBI and removed Plaintiff's firearm from his vehicle. Plaintiff was placed in Trinitas Hospital for a mental evaluation. Plaintiff was then charged with handgun possession under N.J.S.A. § 2C:39-5(b) and possession of a firearm for unlawful purposes under N.J.S.A. § 2C:39-4(a).

The Cranford Police Department's report states that it was the view of both the Cranford Police and the FBI that Plaintiff was known as a "chronic caller" who often provided information with little merit. The FBI received a call from Plaintiff on June 17, 2008 in which Plaintiff claimed to have information regarding the location of weapons of mass destruction. Plaintiff agreed to an in-person interview and at his place of business in New Jersey. FBI agents conducted an interview, at which Plaintiff stated he was an undercover agent for the NSA and needed to carry a firearm for protection against foreign agents. Plaintiff told the agents that he was in possession of a handgun and that it was inside his motor vehicle located at the business premises.

Apparently the FBI Agents at the location communicated to Defendant FBI Agent Gary Adler ("Adler") that Plaintiff had notified them of his possessing a handgun; it is possible that Adler communicated with the Cranford Police and Adler had Defendant Cranford Police Officer Durkin ("Durkin") dispatched to the scene. Am. Compl. ¶ 3. Once Durkin was dispatched to Plaintiff's location, he saw a gun case in plain view inside Plaintiff's vehicle. Plaintiff stated that a weapon was inside the case and Officer Durkin obtained consent from Plaintiff to search the vehicle. Durkin then removed the case from the vehicle. The police report states that a loaded firearm was located inside the case. However, Plaintiff contests the factual accuracy of this claim.

As explained, Plaintiff claims that the events occurring on June 17, 2008 were the result of a conspiracy between the NSA, FBI, and Cranford Police to prevent him from carrying out his duties as an officer of the United States. Am. Compl. ¶ 3. The Amended Complaint alleges that on June 2, 2008, Defendant NSA Deputy Director John C. Englis ("Englis") contacted FBI Agent Adler and directed him to "find a way to frame plaintiff in a suitable 'loaded gun' complaint and admit him to a hospital, so the NSA could claim plaintiff was insane and never worked for it, despite his 22 years of employment." Am. Compl. ¶ 3. Plaintiff also claims that Adler had Cranford Police Officers Zsak, Heester, and Durkin deployed, and these officers obtained his purportedly unloaded gun and filed a false loaded gun complaint. Am. Compl. ¶ 3. Additionally, Plaintiff alleges that Englis arranged for Charles Sutherland

("Sutherland")[2] to receive a hoax terror report on June 2, 2008, so that Sutherland would report it to Plaintiff, who would then proceed to call and consult with the FBI on June 17, 2008. Am. Compl. ¶ 4. It was Plaintiff's call on this date that led to the chain of events resulting in the seizure of Plaintiff's handgun by the Cranford Police.

In short, Plaintiff alleges that there was a conspiracy between the NSA, FBI, and Cranford Police to prevent him from continuing his purported work for the NSA. Plaintiff seeks relief under 42 U.S.C. § 1985(1), which applies when a federal officer is prevented from performing his duties.[3] Plaintiff alleges that at the time he and his firearm were seized, he was an officer of the United States, and protected by Section 1985.

Plaintiff alleges that he was hired by the NSA on February 19, 1987, after 18 months of screening and training by alleged NSA Special Agent Janice Doskey[4] and that his employment agreement lasted until February 19, 2009. Am. Compl. ¶ 6. In support of his position, Plaintiff puts forward a purported letter of acceptance, dated February 19, 1987 and addressed to Doskey, accepting "[her] and Director Odom's offer of employment dated February 13, 1987." The letter also states:

> I have received the directions to the pre-employment fitness testing concern. I will be going there on Friday to meet with Mr. Doug Edwards with whom I had a very nice discussion over the phone today. Then next week I will proceed to Fort Meade to finish my paperwork and other matters.

Plaintiff claims to have been paid by the NSA, through a third party, from 1987 to 1992. Plaintiff also claims that his pay rate increased from 1992 to 2008, but he was never actually paid. Am. Compl. ¶ 42. In other words, the last time Plaintiff alleges that he was paid by the NSA was roughly *17 years prior* to the time the Cranford Police seized his gun on June 17, 2008. Plaintiff alleges that he was promised that a trust was being held in the full amount of his pay and expenses until he was no longer working undercover or until he made a formal

---

[2] Plaintiff claims that Sutherland is "a probationary recruit in Plaintiff's unit." Am. Compl. ¶ 4. Sutherland states in an affidavit that he is "a carpenter and handyman" and that Plaintiff "advised [Sutherland] that [he] is helping [Plaintiff] and [Plaintiff's] control agent, who authorized [Sutherland] to become familiar with [Plaintiff's] work, on certain projects in a probationary manner." Doc. No. 24-7, Ex. C; *cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (mandating *plausibility* as a condition to pursue claim).

[3] 42 U.S.C. § 1985(1) ("If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties ….").

[4] *See supra* note 1 (discussing the status of Doskey and Estores). In any event, the federal government's mistaken filing in regard to Defendant Estores does not lend support to the proposition that *Plaintiff* had any relationship with the NSA.

request for it. Am. Compl. ¶ 42. Plaintiff claims that the NSA disavowed knowledge of him for the first time on July 17, 2008. Plaintiff has already filed another action in this Court to receive the back pay he claims he is due. However, that action for back pay was dismissed, and Plaintiff sought relief by filing a similar matter in the Court of Federal Claims. The instant action is focused primarily around the removal of Plaintiff's weapon on June 17, 2008, which Plaintiff claims was a civil rights violation under Section 1985(1).

### III. STANDARD OF REVIEW

The Federal Defendants' motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is *plausible* on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.*

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

### IV. ANALYSIS

*A. The Federal Defendants' Motion to Dismiss.* It appears that Plaintiff seeks only injunctive relief with regard to the Federal Defendants. Plaintiff requests a permanent injunction against all defendants "to immediately and for all time leave the Plaintiff to his life and livelihood and cease and desist any further interference with him …." Am. Compl. ¶ 77. This vague language does not address any specific ongoing harm caused or threatened by the Federal Defendants. A showing of wrongful action in the past is insufficient grounds for injunctive relief. *Rizzo v. Goode*, 423 U.S. 362, 372 (1976); *Los Angeles v. Lyons*, 461 U.S. 95 (1983). Injunctive relief will be granted only with a showing of a "real and immediate threat of repeated injury." *Rizzo*, 423 U.S. at 372. A persistent pattern of past misconduct is one way of showing a threat of injury. *See id.* at 571.

Under this standard, Plaintiff has not pled sufficient facts to maintain a claim for injunctive relief. Plaintiff has alleged only one specific incident of purported illegal or threatening conduct occurring after the removal of his firearm on June 17, 2008. Plaintiff alleges that in an attempt to consult with the NSA Inspector General Bill Shea ("Shea") on June 19, 2008, "he was told he'd have problems" and was asked: "What would happen if you just walked away?" Am. Compl. ¶ 4. It is unclear whether defendant Shea or someone else spoke these words to Plaintiff. However, even if it was Shea, this interaction need not be construed as a

threat. The language is vague and "problems" could refer to legal issues that weaken Plaintiff's case. Such a comment does not appear threatening. However, Plaintiff alleges that "[t]his pattern has repeated with further threats, life threats, incarceration threats against plaintiff, along with similar threats of harm, death and loss of work to plaintiff's witnesses … which have been prolonged and intense." Am. Compl. ¶ 5. These allegations are too general; they lack specificity and detail. Plaintiff fails to state the names of the defendants making the purported threats; likewise, he fails to give information such as dates, times, and other particulars. Plaintiff has had many opportunities, but he has repeatedly failed to provide more detail. It is unclear how any, much less all, of the Federal Defendants have continuously interfered or have threatened to continuously interfere with Plaintiff's "life and livelihood." Without any details regarding the alleged pattern of threats, the purported risk of future injury amounts to mere speculation.

Additionally, service upon the Federal Defendants appears to be defective. Although Section 1985 may reach federal officials, it seems that such officials are liable as private parties, acting in their individual capacities. It would appear that in such circumstances, service must be effectuated at the defendant's home or usual place of abode. Fed. R. Civ. P. 4(i)(3). Thus, since the Federal Defendants were served at their place of employment, the service would appear to be defective. Special Ex., Doc. No. 24-8.

Because Plaintiff's complaint and amended complaint are subject to the defects described above, because Plaintiff has availed himself of multiple extensions for many of his filings, and for the reasons described in Part IV[B], below, it would appear that further amendment of the complaint in regard to the Federal Defendants would be futile.

*B. The State Defendants' Motion for Summary Judgment.* To maintain a claim under 42 U.S.C. § 1985(1), a plaintiff must plead that "two or more persons … conspire[d] to prevent, by force, intimidation, or threat, [the plaintiff] from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof …." It follows that Plaintiff must allege that he is a federal official of some sort. Plaintiff must also allege that two or more persons agreed to prevent him from executing his office. Plaintiff has failed to meet Federal Rule of Civil Procedure 8(a)(2)'s pleading requirements in regard to both his position with the federal government and the existence of a conspiracy. Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has explained that "[t]he need at the pleading stage for allegations *plausibly* suggesting (not merely consistent with) [the claim] reflects … [a] threshold requirement …." *Twombly*, 550 U.S. at 557 (emphasis added). In other words, a plaintiff's complaint will be dismissed if implausible, even before discovery. Here, Plaintiff claims that he was a federal officer at the time his gun was seized. His claim is highly implausible.

Plaintiff seeks "damages from harm that befell him during his normal work for the U.S. Government, from interference with his official responsibilities as a Special Covert Investigation Agent …, [and] as an undercover employee in a contract of employment with

5

the NSA of approximately 22 years duration ….” Am. Compl. ¶ 1.[5] Although he is not required to provide evidence at the pleadings stage, Plaintiff has attempted to demonstrate his employment through a purported letter of acceptance, dated February, 19, 1987, and an affidavit from a carpenter having no substantial association with the NSA.

Plaintiff's letter of acceptance is over 20 years removed from the events Plaintiff has alleged give rise to his cause of action. On its face, the letter gives no indication of any continuing relationship that would extend to the time period of the relevant events. If the letter is to be believed, it is unclear whether it is for a permanent position or an ad hoc position. Additionally, the letter makes no express mention of the NSA. The letter does not indicate the position's start date, location, or term of employment, and does not include any suggestion of a civil service examination or other statutory protections.

Furthermore, other than his self-serving affidavits, Plaintiff makes no proffer as to having any evidence documenting his employment with the NSA, that is, evidence available without discovery. Plaintiff consistently maintains that he can obtain evidence of his employment, *but only through a subpoena (or other discovery).* Plaintiff concedes that he has no W2 statements, no 1099 forms, no cancelled checks, no job description, no instructions, nor an outline of duties on agency letterhead. Moreover, Plaintiff makes the extraordinary claim that he served as a federal officer for roughly *seventeen years (that is the years prior to the incident at issue here) without pay*, yet he continued to work for the NSA under these conditions. This too is highly implausible. And, most importantly, he has no document assigning him a firearm. It stands to reason that a person who claims to be a federal officer would have in his possession any number of documents which would easily demonstrate his relationship with the federal government, even absent discovery.

To be sure, Plaintiff is *not* obligated to provide evidence at this stage. But where, as here, the only proffer he makes relates to evidence which he does not possess, when one would expect him to possess this type of evidence, his need for discovery demonstrates the implausibility of his claim. Part of the rationale behind *Twombly* was to prevent discovery abuse; i.e., to prevent fishing expeditions and plaintiffs with weak claims from subjecting defendants to the costs of discovery. *Twombly*, 550 U.S. at 559. Many scholars were surprised by *Twombly*, as its arguably heightened pleading standard contradicted *Conley v. Gibson*, 355 U.S. 41 (1957). In *Twombly*, the evidence sought by the plaintiff, that is evidence of an agreement or contract between the defendants in restraint of trade, was the type of evidence one would expect only the defendants to possess. Yet the Supreme Court would not let the action go forward to discovery. Here, however, the requested employment

---

[5] The protections of Section 1985 apply only to any person holding an "office, trust, or place of confidence under the United States" and to "officer[s] of the United States." 42 U.S.C. § 1985(1). The Court doubts that the protections of Section 1985 were intended to apply to those having no more than a mere "contract of employment," Compl. ¶ 1, with a government agency, i.e., persons who lack civil service or other express statutory protections regularizing their appointment and duties. Federal and state authorities customarily distinguish *officers* from mere *employees*. *See, e.g.*, 18 U.S.C. § 872 (distinguishing "officer[s] of the United States" from "employee[s] of the United States"); 18b AM. JUR. 2D *Classification as officer or employee* § 1171 (2004).

documentation is of the type expected to be in Plaintiff's possession. Thus, the logic of *Twombly* applies here even more strongly than it did in *Twombly* itself.

Plaintiff's claim under 42 U.S.C. § 1985 will also be dismissed because Plaintiff has failed to allege sufficient facts regarding a conspiracy among the Federal and State Defendants. Rather than giving details as to who was involved in the conspiracy, what their purpose was in forming it, what prior contacts Plaintiff had with those involved in the conspiracy, and how he has information in this regard prior to discovery, Plaintiff merely makes allegations of a chain of communications which ended in his being detained for mental health evaluation and in the seizure of his handgun. A much more plausible explanation for the events of June 17, 2008 is that Plaintiff contacted the FBI, who, after learning of Plaintiff's firearm, in turn contacted the Cranford Police, which brought Officer Durkin to the scene. Durkin seized Plaintiff's firearm with what appeared to be probable cause and consent.

As in *Twombly*, Plaintiff's Complaint "furnishes no clue as to which of the [defendants] supposedly agreed, or when and where the illicit agreement took place." *Twombly*, 550 U.S. at 565; *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009) (stating that "the complaint here furnishes no clue as to which of [the defendants] supposedly agreed, or when and where the illicit agreement took place"). Plaintiff has made only conclusory allegations which may be consistent with a conspiracy, but do not plausibly suggest a conspiracy. Therefore, Plaintiff has "not nudged [his] claims across the line from conceivable to plausible, [and his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Plaintiff appears to allege several theories of liability under state law. Although these theories are difficult to discern, one appears to be unlawful arrest. To the extent that Officer Durkin acted with probable cause before removing Plaintiff's firearm, that serves as a defense. Plaintiff told the FBI that he had a gun, and this gun was in plain view. Plaintiff does not claim to have a valid permit under state law to possess the gun which was removed. Instead, Plaintiff alleges that he possesses it in his capacity as a federal officer. Am. Compl. ¶ 42. This Court has already determined that this factual allegation is implausible. As such, his state law claims will be dismissed on the merits. Finally, Plaintiff has made no showing that he has complied with the notice provisions of the New Jersey Tort Claims Act, and, for that reason also, his state law claims will be dismissed. *See* N.J.S.A. 59:8-8.

## V.    CONCLUSION

For all reasons elaborated above, the Federal Defendants' Motion to Dismiss is **GRANTED**, and the State Defendants' Motion for Summary Judgment is **GRANTED**. In light of the fact that the Court dismisses Plaintiff's claims under *Twombly*, Plaintiff's motion to compel discovery is **DENIED**. All other motions are **DISMISSED** as moot.

Furthermore, the order accompanying this opinion will be filed on the public docket; and this opinion will be concurrently mailed to the parties; and absent any further court order, this opinion will be filed on the public docket thirty (30) days after the entry of the order accompanying this opinion, at which time the seal in all prior sealed filings will be lifted.

s/ William J. Martini

**DATE: April 27, 2011**                                    **William J. Martini, U.S.D.J.**